```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANTHONY LLANES,

                    Plaintiff,
                                            MEMORANDUM & ORDER
         -against-                          18-CV-3537(JS)(AKT)

STATE OF NEW YORK, CITY OF NEW
YORK, NEW YORK STATE OFFICE OF
MENTAL HEALTH, and COUNTY OF
SUFFOLK,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:          Anthony Llanes, pro se
                        2450 Marsh Glen Drive, Unit 122
                        North Myrtle Beach, South Carolina 29582

For Defendants:
State of New York       Dorothy O. Nese, Esq.
and New York State      Office of the New York State Attorney General
Office of Mental        200 Old Country Road, Suite 460
Health                  Mineola, New York 11501

City of New York        John L. Garcia, Esq.
                        New York City Law Department
                        100 Church Street
                        New York, New York 10007

County of Suffolk       Arlene S. Zwilling, Esq.
                        Suffolk County Attorney
                        H. Lee Dennison Building-Fifth Floor
                        100 Veterans Memorial Highway
                        P.O. Box 6100
                        Hauppauge, New York 11788-0099

SEYBERT, District Judge:
```

Pro se plaintiff Anthony Llanes ("Plaintiff" or "Llanes")[1] brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants the State of New York (the "State"), the New York State Office of Mental Health (the "Office of Mental Health") (together, the "State Defendants"), the City of New York (the "City"), and the County of Suffolk (the "County"). Before the Court are motions to dismiss from the State Defendants (State Mot., D.E. 54), the City (City Mot., D.E. 52), and the County (County Mot., D.E. 51). For the following reasons, the Defendants' motions are GRANTED in their entirety.

BACKGROUND

The following allegations from the Complaint are taken as true for purposes of these motions. In February 2015, at Studio Square beer garden in Astoria, New York, two off-duty New York City Police Department ("NYPD") officers picked up Plaintiff from behind and slammed his head. (Compl., D.E. 1 at ECF pp. 1-7, ¶¶ III A, B; II B; Aff., D.E. 1 at ECF pp. 8-9, ¶ 1.) This caused Plaintiff to suffer damaged and broken teeth and eight staples to his head. (Compl. ¶ IV.) According to Plaintiff, "defendant(s) [then] submitted false videos and false affidavit to 1st District, Central Islip" and he was "unreasonably held at Pilgrim Estate [sic] Hospital after explaining . . . to New York State doctors

---

[1] Llanes paid the filing fee and did not request in forma pauperis relief.

what the officer(s) did" for "longer than 120 days on dismissed charges that were knowingly submitted by DA that were false affidavits and false video." (Compl. ¶¶ II B; IV.)

Plaintiff attached an affidavit from Pantelis Aslanis ("Aslanis"), the chief financial officer for the company that operates Studio Square, to his Complaint. (See Aff.)[2] Aslanis states that on "February 22, 2015, Scott Salzberg was employed as the head floor manager [and] Jonathan Fanelli was a floor manager working under Mr. Salzberg." On that date, Salzberg was a retired NYPD sergeant, and Fanelli was a current New York City Department of Correction officer. (Aff. ¶¶ 2, 3.) The company that owned Studio Square had "hired [the] floor managers that [P]laintiff incorrectly alleges grabbed [P]laintiff from beuind where it is improperly claimed he was dragged, kicked and punched to the ground." (Aff. ¶ 1.) At Studio Square, "[a]ll floor managers oversee the operation of the premises and if there is any altercation among patrons, [they] would be responsible to escort any disruptive patrons out of the premises." (Aff. ¶ 2.) The majority of floor managers have a background in law enforcement. Both Salzberg and Fanelli underwent background checks before being hired by Studio Square. (Aff. ¶¶ 2-3.)

---

[2] The Affidavit appears to have been prepared for a case in New York State Supreme Court, where Plaintiff named Studio Square, related corporate entities, and John Doe A and John Doe B as defendants.

3

Plaintiff seeks money damages in a "reasonable and proper amount." (Compl. ¶ V.) Discovery is ongoing, and for various reasons, all Defendants have moved to dismiss the Complaint.

DISCUSSION

I. Legal Standards

Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the complaints as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950. Additionally, "[t]he

standard for evaluating a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard for a motion to dismiss under Rule 12(b)." Jefferson v. Koenig, No. 15-CV-0544, 2016 WL 8711374, at *4 (E.D.N.Y. Jan. 15, 2016).

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotation marks and citation omitted). See also Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015) (noting that the dismissal of a pro se complaint pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citations omitted). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Hiller, 2015 WL 4619624, at *7.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that,

5

although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

This Court may also consider "documents or information contained in [Defendants'] motion papers if [P]laintiff has knowledge or possession of the material and relied on it in framing the complaint" and "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." O'Neal v. Spota, No. 16-CV-579, 2017 WL 118044, at *2 (E.D.N.Y. Jan. 12, 2017). Under Rule 201(b)(2), this Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

II. Analysis

   A. The State Defendants

The State Defendants argue that (1) this Court lacks subject matter jurisdiction because (a) Plaintiff's claims are barred by the Eleventh Amendment and (b) he cannot establish liability under 42 U.S.C. § 1983; (2) Plaintiff fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because (a) his tort claims are barred because he failed to file a timely

notice of claim, (b) this action is barred because he did not receive a favorable termination of the underlying case against him, and (c) Plaintiff's Complaint does not comply with Federal Rule of Civil Procedure Rule 8. (State Br., D.E. 56, at 6-9.) The State Defendants ask for dismissal under Rule 12(b)(1) and 12(b)(6) and judgment on the pleadings under Rule 12(c). (See State Mot.)

In opposition, Plaintiff does not address any of the State's specific arguments. Rather, he claims that he "has a valid equal rights section 1983 claim, the violent confrontation that led to this suit was by Sergeant NYPD Detective Salzberg and Jonathan Fanelli, both ganged up on [me] in reckless disregard for human decency." (Pl. Opp. to State Mot., D.E. 61, at ECF p. 2.)

Plaintiff's only claim against the State Defendants is that they unreasonably held him in a psychiatric hospital after he told doctors "what the officer(s) did." (Compl. ¶ IV.) The State Defendants argue that Plaintiff was committed to Pilgrim State during a criminal prosecution for three misdemeanor charges brought against him by the Suffolk County District Attorney. (State Br. at 4.)[3] During that prosecution, a state court judge

---

[3] The three separate misdemeanor charges against Plaintiff appear completely unrelated to the February 2015 incident at Studio Square. The criminal charges each stemmed from actions taking place after February 2015 and involved graffiti, resisting arrest, and endangering the welfare of a child. (See State Br. Appendix, D.E. 69, at 4-6.)

7

issued an order directing that Plaintiff's mental capacity be evaluated under New York Criminal Procedure Law Article 730,[4] and medical professionals found that he lacked the capacity to understand the criminal proceedings against him. (State Br. at 4-5.) On August 16, 2016, the judge dismissed the charges and ordered that Plaintiff be committed to the custody of the Office of Mental Health for care and treatment for a period of no longer than 90 days. (State Br. at 4-5.) Upon his transfer from a correctional facility to Pilgrim State, Plaintiff spent less than one month inpatient at Pilgrim State. (State Br. at 5-6.)

The State Defendants included documentation of the foregoing in an Appendix attached to their Brief. (See State Br. Appendix.) The documents include the three misdemeanor informations charging Plaintiff with various crimes, the court paperwork, the 730 evaluation paperwork, jail paperwork, and medical paperwork. The Court takes judicial notice of these documents.

First, Plaintiff's claims against the State Defendants are barred by the Eleventh Amendment. "Under the Eleventh

---

[4] Under CPL 730.30(1), "At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person."

8

Amendment, a state and its agencies are generally immune from suit in federal court." Williams v. N.Y. State Office of Mental Health, No. 10-CV-1022, 2014 WL 1311405, at *5 (E.D.N.Y. Mar. 31, 2014). The two exceptions are where a state clearly waives immunity or Congress clearly abrogates immunity. "Section 1983 does not abrogate the Eleventh Amendment immunity of the States." Id. "Because [Plaintiff] seeks to recover a monetary award against these Defendants in their official capacities, they are immune from suit under the Eleventh Amendment . . . [which] bars suits brought by a state's own citizens in federal court." Kalamaras v. N.Y. State Div. of Parole, No. 15-CV-3775, 2015 WL 6760330, at *2 (E.D.N.Y. Nov. 5, 2015) (citations omitted). The State and the Office of Mental Health are entitled to Eleventh Amendment immunity for their actions in connection with Plaintiff's commitment. See Williams, 2014 WL 1311405 at *5 ("OMH is a state agency and is entitled to assert New York State's Eleventh Amendment immunity because New York has not waived its immunity from suit, either generally or specifically, for OMH, and Congress has not abrogated New York's Eleventh Amendment immunity in this context.") (internal quotation marks and citations omitted).[5]

---

[5] Although Plaintiff does not specifically attack the 730 process or name individual state mental health professionals as defendants, he claims, with no factual support, that he was confined based on false information, false documents, and false video. He alleges "[m]alpractice by State of New York Mental Health Office" as an injury. (Compl. ¶ IV.) "[U]nder New York

9

"The Court notes that the Plaintiff's Section 1983 claims . . . must [also] be dismissed [because] neither a state nor one of its agencies . . . is a 'person' under § 1983." Kalamaras, 2015 WL 6760330 at n.3 (internal quotation marks and citations omitted).

Second, to the extent Plaintiff alleges he was arrested based on false information and "unreasonably held" on "dismissed charges," (Compl. ¶ IV), he has not established a favorable termination of the proceedings against him. "'[T]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor.'" Miller v. Rice, No. 14-CV-2928, 2014 WL 3734544, at *4 (E.D.N.Y. July 28, 2014) (quoting Ricciuti v. N.Y. City Transit Auth., 124 F. 3d 123, 130 (2d Cir. 1997). "Because the charges against [Plaintiff] were dismissed pursuant to Article 730 . . . he has not pleaded, and did not receive, a favorable

---

law, when a court believes that a defendant may be incapacitated, it 'must issue an order of examination.' C.P.L. § 730.30(1). Therefore, the examinations conducted by defendant [medical professionals], which comprise the wrongful conduct [Plaintiff] alleges, would have been, and were, conducted pursuant to a court order. Given the integral and inseparable connection of these examinations to the in-court competency proceeding that sanctioned them, [the doctors] are entitled to immunity from suit." Walton v. Rubel, No. 16-CV-1989, 2018 WL 3369664, at *3 (E.D.N.Y. July 10, 2018).

10

termination. Accordingly, his malicious prosecution claim fails." Lewis v. Brown, No. 15-CV-5084, 2017 WL 1091986, at *6 (S.D.N.Y. Mar. 15, 2017).

The State Defendants committed Plaintiff based upon a lawful state court order. They are entitled to Eleventh Amendment immunity, and Plaintiff has not plausibly alleged any claims against them. Thus, his claims against the State Defendants are DISMISSED.

B. The County

The County argues that (1) Plaintiff's false arrest claim is barred by the applicable three-year statute of limitations and (2) he has not established a malicious prosecution claim because he did not obtain a favorable termination of the proceedings below. (County Br., D.E. 51-5, at 2-3.) The County also includes documents with its motion. (County Mot. Ex. A (Arrest Report), D.E. 51-1; Ex. B (Prisoner Activity Log), D.E. 51-2; and Ex. C (Case Summary), D.E. 51-3. The Court takes judicial notice of these documents. Plaintiff responds that the statute of limitations should be tolled for the time he spent at Pilgrim State; he does not address the County's favorable termination argument. (Pl. Opp. to County Mot., D.E. 58, at 1.)

First, as to the statute of limitations, the County states that Plaintiff was arrested on May 17, 2015 and arraigned on May 18, 2015. Plaintiff commenced this action on June 18, 2018,

11

"more than three years" after his arraignment. (County Br. at 2.) "[T]he statute of limitations for a claim of false imprisonment, which includes false arrest, begins to run at the time the [Plaintiff] 'becomes held pursuant to [legal] process--when, for example, he is bound over by a magistrate or arraigned on charges.'" Moco v. N.Y. City Police Dep't, No. 17-CV-5608, 2018 WL 344968, at *2 (E.D.N.Y. Jan. 9, 2018), appeal dismissed sub nom. Moco v. Police Officer, N.Y. City Shield No. 935192, No. 18-762, 2018 WL 4440416 (2d Cir. Aug. 8, 2018) (quoting Wallace v. Kato, 549 U.S. 384, 389, 127 S. Ct. 1091, 1096, 166 L. Ed. 2d 973 (2007)) (third alteration in original).

Although Plaintiff argues that the time he spent in Pilgrim State should toll the statute of limitations, "[i]n § 1983 claims filed in New York, federal courts are required to apply the New York rule for tolling the statute of limitations [and w]hile New York has codified a number of statutory tolling provisions, imprisonment does not itself act as a toll for prisoners bringing § 1983 claims." Venticinque v. Brown, No. 09-CV-0286, 2010 WL 1486449, at *2 (E.D.N.Y. Apr. 14, 2010) (internal quotation marks and citations omitted).

New York does recognize the doctrine of equitable tolling "as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights," but here, "Plaintiff's arguments do not demonstrate that he is

12

entitled to equitable tolling." Gonzalez v. Rikers Island Warden, No. 14-CV-6749, 2017 WL 9674495, at *3 (E.D.N.Y. Dec. 11, 2017), R&R adopted, 2018 WL 1283683 (E.D.N.Y. Mar. 13, 2018) (internal quotation marks and citations omitted). More than confinement is required--courts have held that transfers between facilities, solitary confinement, and lack of access to a law library are not sufficient to warrant equitable tolling. See Gonzalez, 2017 WL 9674495 at *3 and Venticinque, 2010 WL 1486449 at *2. Additionally, the Court notes that upon review of the State Defendant's submissions, it appears that Plaintiff spent less than 30 days in Pilgrim State, so application of the equitable tolling doctrine is unlikely to bring his claim within the three-year statute of limitations.

Thus, at this time, Plaintiff's false arrest claim is barred by the applicable statute of limitations and it is DISMISSED. However, due to Plaintiff's pro se status, the Court grants him leave to replead and to establish that he was prevented in some extraordinary way from exercising his rights.

Second, as to the favorable termination argument, which Plaintiff has not opposed, for the same reasons discussed in connection with the State Defendants, the Court finds that Plaintiff has not alleged a favorable termination of his prosecution and his malicious prosecution claim against the County is DISMISSED.

13

Finally, the Court notes that Plaintiff argues in his opposition that "[t]his kind of wrongdoing has been going on for a long time" with the Suffolk County Police Department. (Pl. Opp. to County Mot. at 1.) Although the County does not raise a Monell argument, Plaintiff wholly fails to allege in his Complaint that any of the challenged actions were undertaken pursuant to a municipal policy, practice or custom that deprived Plaintiff of a constitutional right as is required by Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978) and its progeny. Thus, to the extent that Plaintiff brings this action against the County, he has failed to allege a policy or practice and his claims are insufficiently pled.

C. The City

The City argues that (1) Plaintiff's claims against the City are time barred, (2) Plaintiff did not file a Notice of Claim, (3) any alleged harm was not committed by individuals acting under color of state law, and (4) Plaintiff fails to state a Monell claim for municipal liability. (City Br., D.E. 53, at 4-8.) Plaintiff does not specifically respond to the City's arguments. (Pl. Opp. to City Mot., D.E. 59.)

First, Plaintiff's claims against the City are time-barred.

> Section 1983 itself does not provide a statute of limitations, but courts apply the statute of limitations for personal injury actions under state law. For Section 1983 actions filed in New York, the applicable statute of limitations is Section 214 of the Civil Practice Law and Rules ('C.P.L.R.'), which allows three years to file suit. A cause of action under Section 1983 accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action.

Colson v. Haber, No. 13-CV-5394, 2016 WL 236220, at *3 (E.D.N.Y. Jan. 20, 2016) (internal quotation marks and citations omitted).

Here, the incident at Studio Square with Salzberg and Fanelli occurred on February 22, 2015. (Compl. ¶ III.B, Aff., at ECF p. 8.) Thus, Plaintiff knew or had reason to know of his injuries on that date. He did not commence this action until June 18, 2018, almost four months after the statute of limitations expired. His claims against the City are time-barred and are thus DISMISSED. However, again, in an abundance of caution due to Plaintiff's pro se status, the Court grants him leave to replead and offer arguments as to whether equitable tolling applies. The Court again notes that time spent incarcerated or committed does not automatically toll the statute of limitations.[6]

---

[6] To the extent that Plaintiff is alleging or will allege any state law claims in addition to his federal Section 1983 claims, the Court notes that "[c]laims arising under New York state law brought in federal court are subject to state procedural rules. To that end, New York state courts strictly construe Notice of Claim requirements, which federal courts must apply in exercising supplemental jurisdiction over state law claims." Walker v. Vill. of Freeport, No. 15-CV-4646, 2016 WL 4133137, at

15

Second, "[t]o state a claim under Section 1983, a plaintiff must demonstrate that the defendant deprived him of a federal or constitutional right while acting under color of state law." Jones v. Cty. of Suffolk, No. 15-CV-0111, 2018 WL 2023477, at *10 (E.D.N.Y. May 1, 2018), aff'd, 936 F.3d 108 (2d Cir. 2019).

As to Fanelli, who was allegedly employed by the New York City Department of Correction at the time of the incident, "[i]t is axiomatic that under color of law means under pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 475 (E.D.N.Y. 2002) (internal quotation marks and citations omitted). Liability may be found only where an off-duty officer "invokes the real or apparent power of the police department." Id. (internal quotation marks and citation omitted). Here, Fanelli was clearly off-duty and acting in the course of his employment by a private entity at the time of this incident. Additionally, because Salzberg was retired from the New York City Police Department at the time of this incident, "it is clear that any acts taken by [him] after that date were not done under color

---

*9 (E.D.N.Y. June 13, 2016), R&R adopted, 2016 WL 4132252 (E.D.N.Y. Aug. 2, 2016) (internal quotation marks and citations omitted). A timely notice of claim is a condition precedent to filing a tort action against a municipality and a plaintiff must affirmatively plead that he has timely filed a notice of claim. See id. Pursuant to N.Y. Gen. Mun. Law § 50-e, "the notice of claim shall . . . be served . . . within ninety days after the claim arises . . . ."

16

of law." Voght v. Voght, No. 05-CV-1170, 2006 WL 8453754, at *2 (N.D.N.Y. July 14, 2006) (1983 claims against retired state trooper dismissed because they were "personal in nature" and not under color of state law) (internal quotation marks and citation omitted). Plaintiff has not plausibly alleged that either Fanelli or Salzberg was acting under color of state law. He makes no mention of Fanelli or Salzberg invoking their status as retired or off-duty members of law enforcement, displaying official badges, or acting at the direction of the police.

Further, to the extent that the Complaint purports to allege a Section 1983 claim against the City based on the misconduct of its personnel, such claims are insufficiently pled. Plaintiff wholly fails to allege that any of the challenged actions were undertaken pursuant to a municipal policy, practice or custom that deprived Plaintiff of a constitutional right as is required by Monell. A municipal employee's personal participation in an alleged use of excessive force while acting as a bouncer at a private bar or restaurant, without more, is insufficient to establish the City's liability. See Colacino v. Crabby Joe's Inc., No. 04-CV-2117, 2006 WL 8440911, at *3 (E.D.N.Y. Sept. 18, 2006) ("even assuming that [an assistant district attorney employed as a bouncer] acted under color of state law, there would be no basis to impose Monell liability against the County based upon an isolated incident. Municipal liability may not be imposed using

17

a theory of respondeat superior. [T]he employer-employee relationship is in itself insufficient to establish the necessary causation. Thus, a city cannot be held liable under § 1983 on a theory of respondeat superior.") (internal quotation marks and citations omitted).

Accordingly, because Plaintiff's claims against the City are time-barred and do not plausibly allege a violation of Section 1983, they are DISMISSED.

III. Leave to Replead

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to replead should be liberally granted to pro se litigants. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)). Plaintiff is thus given the opportunity to amend his Complaint in accordance with this Order. He may amend his Complaint as to the substance of his claims and any circumstances he believes warrant equitable tolling of the statute of limitations, where applicable. Any Amended Complaint shall be filed within thirty (30) days from the date of this Order, shall be titled "Amended Complaint," and shall bear Docket Number 18-CV-3537. Plaintiff is cautioned that the Amended Complaint will completely replace the original Complaint. Therefore, all claims

and allegations Plaintiff wishes to pursue as to all Defendants must be included in the Amended Complaint. Plaintiff is warned that his failure to timely file an Amended Complaint will lead to the dismissal of his claims WITH PREJUDICE and the case will be closed. The parties shall proceed with discovery in accordance with Judge Tomlinson's orders.

CONCLUSION

For the foregoing reasons, Defendants' motions (Docket Entries 51, 52 and 54) are GRANTED in their entirety. The Complaint is DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND IN ACCORDANCE WITH THIS ORDER. Should Plaintiff not file an Amended Complaint within thirty (30) days of date of this Order, the Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED. Given Plaintiff's pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiff.

SO ORDERED.

Dated: September __30__, 2019  /s/ JOANNA SEYBERT_____
      Central Islip New York    Joanna Seybert, U.S.D.J.